19 P.3d 760

**Douglas M. RHEAD and Raeola Rhead, husband and wife, Plaintiffs–Appellants,**

v.

**HARTFORD INSURANCE COMPANY OF THE MIDWEST, a foreign corporation, and Does I through V, inclusive, Defendants–Respondents.**

No. 24983.

Supreme Court of Idaho, Rexburg, September 2000 Term.

Feb. 22, 2001.

Steven W. Shaw, Hayward, CA, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Chdt., Idaho Falls, for respondents. Bradley J. Williams argued.

SCHROEDER, Justice.

Douglas and Raeola Rhead (Rheads) appeal the decision of the district court granting summary judgment in favor of Hartford Insurance Company. The district court determined that the Rheads did not have an insurable interest in property that was destroyed. The decision of the district court is vacated.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Cathy and Fred Afraid of Bear (Afraid of Bears) purchased a house located on the Fort Hall Indian Reservation in 1969 where they resided until 1984 when they moved to South Dakota. The Rheads agreed to purchase the house from the Afraid of Bears who assigned to the Rheads their rights to a lease of the Reservation land where the house stood.

A dispute over the house arose in 1986. The Afraid of Bears wanted the Rheads to leave the land and agreed to allow the Rheads to remove the house upon immediate payment of the full purchase price. The Rheads were unable to pay the full amount, and meetings failed to resolve the dispute over the house.

Another dispute concerned the Rheads' occupancy of the land. The Bureau of Indian Affairs (BIA) notified the Afraid of Bears and the Rheads that the assignment of the lease to the Rheads was cancelled because it was entered into without BIA approval. The BIA told the Rheads to remove all personal property, including the house, from the land within 150 days.

The Afraid of Bears informed the BIA of their intent to return to the Fort Hall Reservation, their desire to cancel the agreement with the Rheads, and their refusal to accept further payments from the Rheads. The Rheads continued to make payments to the Afraid of Bears, but the Afraid of Bears refused to accept the December 1989 payment. This was the last payment offered by the Rheads.

In the midst of the disputes the Rheads obtained homeowners' insurance from Hartford Insurance Company of the Midwest (Hartford). The insurance coverage included $45,000 for the house and $22,500 for personal property.

The Rheads made attempts to negotiate the purchase of the land from the BIA, but the BIA informed them that it would not sell the land, and that all personal property had to be removed by August 21, 1990. According to the BIA, any property that remained on the land would become the property of the landowners. The Rheads appealed the BIA decision ordering them off the land to the Portland Area Director and subsequently to the Washington, D.C. BIA office. Both appeals resulted in affirmation of the Fort Hall BIA's decision. The Rheads sought an extension of time to remove their property, and the BIA granted an extension until October 21, 1990, requiring the Rheads to pay rent for their time on the property. The Rheads made rental payments in compliance with the demand.

The Afraid of Bears offered to accept $4,400 as payment in full for the house, but the Rheads were unable to pay this amount and no agreement was reached. The Rheads subsequently requested another extension from the BIA. The BIA extended the deadline to November 2, 1990, for property other than the house, and November 21, 1990, for removal of the house. The Rheads again paid a rental fee.

Around October 29, 1990, the Afraid of Bears erected a fence that prevented the Rheads from accessing the property, and on October 31, 1990, the Afraid of Bears filed a petition for wrongful detainer and for repossession of the house. The Afraid of Bears allegedly vandalized the house by removing siding, roofing, and several items of the Rheads' personal property. As a result of this conduct, the Rheads requested another extension from the BIA but did not receive a response. On February 9, 1991, Hartford renewed the insurance policy on the house.

The house was severely damaged by fire in June of 1991, allegedly started by the Afraid of Bears. The Rheads filed a claim with Hartford to recover the amount of damage from both the vandalism and the fire. Hart-

ford denied the claim on the basis that the Rheads lacked an insurable interest in the house at the time of the fire.

The Rheads filed suit in district court against Hartford for breach of contract and breach of the implied covenant of good faith and fair dealing and insurance bad faith. Hartford moved for partial summary judgment regarding the breach of the implied covenant of good faith claim. The district court initially denied the motion. Subsequently, the district court reconsidered Hartford's motion for partial summary judgment and granted the motion. Hartford then filed a motion for summary judgment on the issue of whether the Rheads had an insurable interest in the house. The district court granted Hartford's motion for summary judgment, finding as a matter of law that the Rheads lacked an insurable interest in the house, and that Hartford was not estopped from raising the insurable interest defense. Subsequently, the district court dismissed the Rheads' complaint. The Rheads appealed.

## II.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same standard used by the district court in ruling on a motion for summary judgment. *See, e.g., Goodson v. Nez Perce County Bd.,* 133 Idaho 851, 852, 993 P.2d 614, 615 (2000); *First Sec. Bank of Idaho v. Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c); *see also Goodson,* 133 Idaho at 852, 993 P.2d at 615.

When this Court reviews a decision of the district court, it will not disturb the district court's findings of fact if they are supported by substantial and competent evidence. *See The Highlands, Inc. v. Hosac,* 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997) (quoting *Kootenai Elec. Co-op. v. Washington Water Power Co.,* 127 Idaho 432, 434, 901 P.2d 1333, 1335 (1995)). However, this Court

will review freely whether the district court's conclusions of law correctly stated the legal rules or principles and correctly applied those rules to the facts found. *See, e.g., Basic American, Inc. v. Shatila,* 133 Idaho 726, 727, 992 P.2d 175, 176 (1999); *Riley v. Rowan,* 131 Idaho 831, 833, 965 P.2d 191, 193 (1998). The credibility and weight given to evidence is in the province of the trial judge as the trier of fact, but this Court is not bound by legal conclusions of the trial court and is free to draw its own legal conclusions from the facts presented. *See, e.g., Basic American, Inc.,* 133 Idaho at 727, 992 P.2d at 176; *The Highlands, Inc.,* 130 Idaho at 69, 936 P.2d at 1311.

## III.

### THE RECORD DOES NOT ESTABLISH WHETHER THE RHEADS POSSESSED AN INSURABLE INTEREST IN THE PROPERTY AT THE TIME OF THE FIRE DAMAGE.

The district court considered various factors in reaching the conclusion that the Rheads had lost their insurable interest in the house at the time of the fire:

> Based on the proclamation by the BIA that the house would become the property of the Afraid of Bears following inaction by the Rheads in removing it by November 21, 1990, the uncertainty of the legal ownership of the home and the failure of the Rheads to make any payments to the Afraid of Bears for a year and a half prior to the fire damage, in addition to the failure of the Rheads to possess the home at the time of the loss. . . .

It is necessary to analyze the nature and need for an insurable interest, together with the factors considered by the district court.

#### A. The Necessity Of An Insurable Interest

An insurable interest must exist at the time of the loss in order for the insured party to enforce an insurance contract. Idaho Code § 41–1806(1). The doctrine of insurable interest is governed by I.C. § 41–1806, which states:

(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

(2) "Insurable interest" as used in this section means *any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance* free from loss, destruction, or pecuniary damage or impairment.

(3) The measure of an insurable interest in property is the extent to which the insured might be directly damnified by loss, injury, or impairment thereof.

I.C. § 41–1806 (emphasis added). This Court has interpreted I.C. § 41–1806 to be a "less inclusive" definition of insurable interest than was found in the common law definition. *See Keller Lorenz Co. v. Ins. Assoc. Corp.*, 98 Idaho 678, 685, 570 P.2d 1366, 1373 (1977); *see also 3 Couch on Insurance* 2d, § 41:1, p. 3. The Court has addressed the issue of insurable interest in *Boston Ins. Co. v. Beckett*, 91 Idaho 220, 222, 419 P.2d 475, 477 (1966) and *Keller*, 98 Idaho at 685, 570 P.2d at 1373.

In *Boston* the Court determined that the mere "right to use [the property] in question, which ... could have been terminated at any time by [the owner], does not constitute a 'substantial economic interest' as is contemplated by the statute." *Boston*, 91 Idaho at 222, 419 P.2d at 477. In *Boston*, the owner of a cabin made a testamentary gift of the cabin to her daughter and son-in-law and gave them the present right to use the cabin but retained title until the testamentary gift became effective. The son-in-law paid for maintenance of the house, the lease rental for the property, and also acquired a fire insurance policy on the cabin. Later, the son-in-law, who had separated from owner's daughter and had been denied access to the cabin, sought to collect on the policy when the cabin was destroyed by fire. The Court determined that the son-in-law lacked an insurable interest in the cabin, because the present right to use, even with a right to title in the future, did not constitute a "substantial and economic interest" because the owner could revoke the right at anytime.

In *Keller*, the president of a corporation agreed to sell a truck to the corporation, but no contract was executed nor were any payments made towards the purchase of the truck. The truck was destroyed in a fire at one of the corporation's warehouses. The insurance on the warehouse excluded coverage for personal property. This Court concluded that there was no insurable interest where the property to be insured was the subject matter of a contract neither party could enforce due to its informal nature which both sides could have refused to perform. *Keller*, 98 Idaho at 685, 570 P.2d at 1373. Since the truck was still the personal property of the president, it was not included in the insurance coverage.

### B. Factors Considered In Determining Whether The Rheads Had An Insurable Interest

■ There is little dispute that the Rheads possessed an insurable interest in the property at the time they entered into a contract for the purchase of the house. The dispute arises over whether they lost their interest at some point during the disputes with the Afraid of Bears and the BIA.

#### 1. The authority of the Bureau of Indian Affairs

In determining that the Rheads lacked an insurable interest in the house, the district court considered the statement in a letter from the BIA declaring a date when the Rheads were required to move all personal property or lose the property. The letter was sent on July 16, 1990, and stated in part:

> We recommend that you proceed *immediately, without further delay,* to remove your property *by the deadline date.* Property left after that date will be considered the property of the landowners. The status of your contract with the Afraid of Bears related to the purchase of the house is between you and them, since it is personal property and does not come under Bureau Regulations.

(emphasis in original). Neither party nor this Court has found authority to support the BIA's statement that, "Property left after that date will be considered the property of the landowners." The district court relied on the BIA's statement of authority to support the conclusion that the BIA extinguished the Rheads' insurable interest. However, the statement in the BIA's letter gives no indication that the BIA had the authority to make such a determination. This statement is not a sufficient basis to determine the Rheads lost their insurable interest. In fact the same letter acknowledges that the contract for the purchase of the house was not under Bureau Regulations and that any dispute regarding the contract was solely between the Rheads and the Afraid of Bears.

### 2. Uncertainty of legal ownership does not extinguish the Rheads' insurable interest.

The district court identified the "uncertainty of legal ownership," arising from the dispute over the house, as a factor in its determination that the Rheads lost their insurable interest in the house. The finding of an uncertainty of ownership arises mainly from the BIA's assertion that property left after a certain date would become the property of the landowners. However, there is no showing of authority to support such a determination by the BIA. The dispute was over the parties' relationship surrounding the contract for the purchase of the house by the Rheads from the Afraid of Bears. A dispute over the purchase contract does not extinguish the Rheads' insurable interest because the Rheads have not lost an ownership right in the house by any legal process that would terminate their insurable interest in the property.

### 3. The unpaid mortgage payments do not extinguish the Rheads' insurable interest in the house.

The district court noted the Rheads' failure to make their mortgage payments to the Afraid of Bears as a factor in the Rheads' loss of their insurable interest. However, the Rheads' failure to pay their mortgage is not dispositive of whether they had an interest in the house.

The Rheads' insurable interest arose under a contract for the purchase of the house, and there is no indication the contract was unenforceable. The Rheads had rights in the property to the extent they could enforce the contract. They made payments to the Afraid of Bears for almost four years. The Rheads stopped making payments when the Afraid of Bears refused to accept payments. Nothing in this conduct is sufficient to terminate the Rheads' insurable interest.

### 4. Possession is not required for the Rheads to retain an insurable interest in the house.

Another factor considered in the district court's determination that the Rheads did not have an insurable interest in the house is that they did not possess the house since October of 1990. However, this factor is insufficient to extinguish their interest. There may be an insurable interest in property without possessing the property. In fact, the Rheads did possess the house during significant times which bolsters their claim that they had an insurable interest. During 1985 the Rheads' use of the house was periodic, but they maintained some kind of possession throughout the dispute. Although, they resided in Kimberly, Idaho, during the week and in Fort Hall on the weekends, two of the Rheads' children remained in the Fort Hall house during the week. During this time the Rheads made improvements to the house. When it became clear the Rheads would need to move the house, they unhooked the utilities in preparation to move the house.

As time went on, the Afraid of Bears' conduct became more confrontational. The Afraid of Bears nailed a note to the door of the house telling the Rheads to remove all of their "junk" from the property or the Afraid of Bears would do it for them. In response, Mr. Rhead slept there at night to protect the house. The Rheads' actual possession of the house ended only after the Afraid of Bears fenced in the property, preventing the Rheads from entering. The Afraid of Bears then began to vandalize the house by remov-

ing siding, roofing, and some of the Rheads' personal property.

■ The purpose of the insurable interest doctrine is to prevent parties from insuring wagering or gambling. *See Nelson v. New Hampshire Fire Ins. Co.*, 263 F.2d 586 (9th Cir.1959) ("Requirement of an insurable interest in insured property is for purpose of preventing use of insurance as a means of wagering, since one who has no protectable interest in insured project is not allowed to gamble upon the possibility of its destruction."). The Rheads' conduct in relation to the house did not violate this policy. The Rheads maintained, possessed, improved, and made payments on the house for as long as they were able. They ultimately refrained from dealing with the house as a consequence of the actions of the Afraid of Bears. The Rheads' insurable interest in the property continued absent a showing that they abandoned or were properly divested of that interest.

## IV.

## GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHEN HARTFORD KNEW OF THE DISPUTE OVER THE HOUSE.

■ The Rheads claim Hartford had knowledge of a potential dispute between the Rheads and the Afraid of Bears in December of 1990 and continued the policy even with such knowledge. The Rheads' assertion is based on a note written from Idaho Intermountain Claims (IIC) to Hartford indicating knowledge of the possibility of a lack of an insurable interest. The Rheads contend the note was dated December of 1990; however, the note is included in the record and is dated December 24, 1991.

Hartford argues it had no knowledge of the dispute until February 22, 1991, when Hartford took a recorded statement of the Rheads. Hartford then conducted an investigation into the Rheads' insurable interest. Hartford retained an attorney to issue an opinion letter regarding the Rheads' interest. In November of 1991, five months after the fire, the opinion letter concluded that the Rheads had no insurable interest in the property at the time of the fire damage as a consequence of failing to remove the house by the date specified by the BIA.

■ The insurer may waive or be estopped from asserting the insurable interest defense where the insurer is aware of the lack of an insurable interest yet issues the policy or continues to recognize the policy upon discovering the lack of an insurable interest. *See 3 Couch on Insurance* 3D, § 41:8, p. 17. This Court has estopped an insurance company from asserting lack of an insurable interest as a defense where the insurance company had knowledge of the policyholder's intent regarding the coverage. *See Boise Ass'n of Credit Men v. U.S. Fire Insurance Co.*, 44 Idaho 249, 256 P. 523 (1927) (By insuring property, with the knowledge that part of the property belonged to others, the insurers were estopped to deny insurable interest.).

The district court found Hartford had no knowledge of the dispute until February 22, 1991, when Hartford took the Rheads' statement. However, Hartford renewed the policy in February of 1991 and continued coverage for the five months after it claims that it knew of the potential lack of an insurable interest. The record is without evidence indicating whether the Rheads believed they were still insured, whether Hartford continued to receive payments from the Rheads while they conducted their investigation, or if Hartford otherwise gave Rheads cause to believe they were still insured which the Rheads relied upon. A genuine issue of a material fact exists as to whether Hartford is estopped or waived the right to deny coverage.

## V.

## THE COURT WILL NOT CONSIDER BREACH OF CONTRACT AND BAD FAITH ISSUES NOT ADDRESSED BY THE RHEADS IN THEIR INITIAL BRIEF TO THIS COURT.

Hartford asserts the Rheads' failure to argue the breach of contract and bad faith claims identified in their notice of appeal

**452**

prohibits this Court from addressing such issues.

 Idaho Appellate Rule (I.A.R.) 35(a)(4) requires the appellant's brief to include:

> A list of the issues presented on appeal, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of the issues should be short and concise, and should not be repetitious. The issues shall fairly state the issues presented for review. The statement of issues presented will be deemed to include every subsidiary issue fairly comprised therein.

I.A.R. 35(a)(4). This Court will not review issues not presented in the statement of issues or argued by either party in their briefs. *See State v. Crowe,* 131 Idaho 109, 111, 952 P.2d 1245, 1247 (1998); *see also State v. Hoisington,* 104 Idaho 153, 159, 657 P.2d 17, 23 (1983). However, the appellant's statement of the issues will be deemed to include every subsidiary issue fairly comprised therein. *See State v. Robison,* 119 Idaho 890, 894, 811 P.2d 500, 504 (Ct.App.1991). This rule will be relaxed when the issues are supported by argument in the briefs. *See Crowe,* 131 Idaho at 111, 952 P.2d at 1247; *see also State v. Prestwich,* 116 Idaho 959, 961, 783 P.2d 298, 300 (1989), *overruled on other grounds by State v. Guzman,* 122 Idaho 981, 842 P.2d 660 (1992).

The Rheads failed to raise the issues of breach of contract and bad faith in their initial brief. The Court will not consider those issues.

## VI.

### CONCLUSION

The order of the district court granting summary judgment to Hartford on the basis of a lack of an insurable interest is vacated and the case is remanded for further proceedings to determine if the Rheads possessed an insurable interest in the property, including the question of the BIA's authority to make a determination of rights to the house. The Rheads are awarded costs. No attorney fees are allowed.

Chief Justice TROUT and Justices WALTERS and KIDWELL concur.

Justice SILAK recused herself following oral argument and did not participate in the decision.