IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 51236

| | |
|---|---|
| McSHANE DAVID ERLEBACH, | ) |
| | ) Filed: March 4, 2024 |
| Petitioner-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MEGAN IRENE ERLEBACH, nka | ) OPINION AND SHALL NOT |
| MEGAL IRENE KYGAR, | ) BE CITED AS AUTHORITY |
| | ) |
| Respondent. | ) |
| | ) |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Matthew R. Thompson, Magistrate.

Judgment modifying child custody, affirmed.

Cosho Humphrey, LLP; Katherine A. Meier, Boise, for appellant. Katherine A. Meier argued.

Bevis, Thery, Henson & Katz, LLP; Phillip M. Bevis, Boise, for respondent. Phillip M. Bevis argued.

_____

LORELLO, Judge

McShane David Erlebach appeals from a judgment modifying child custody. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

McShane and Megan Irene Erlebach, nka Megan Irene Kygar, divorced in 2017. The parties have three children, two of whom are minor children--one of the children was born in 2009 and the other was born in 2012. Less than a year following the divorce, Megan filed a petition seeking to modify the decree's custody and visitation schedule. Thereafter, the parties stipulated to a modification of custody and child support, and the magistrate court entered a judgment reflecting those modifications. At the time this judgment was entered, McShane and the children

1

resided in Ontario, Oregon, while Megan resided in Caldwell, Idaho. However, in November 2021, Megan relocated to Fruitland, Idaho, and obtained new employment in Ontario.

A year later, Megan filed another petition to modify, alleging substantial changes in the parties' circumstances since the prior judgment. Specifically, Megan alleged substantial changes relating to her living situation and employment, as well as the parties' incomes and ability to co-parent. A trial on Megan's petition was held in 2023. After hearing the testimony of witnesses and reviewing the evidence admitted at trial, the magistrate court issued its oral findings and conclusions. The magistrate court found there was a material change in circumstances warranting modification of the judgment.[1] The magistrate court further found that modification of the judgment is in the children's best interests and awarded each party equal physical custody. Thereafter, McShane sought permission to pursue an expedited appeal, and the request was granted. McShane now appeals.

## II.

## STANDARD OF REVIEW

In a permissive appeal under Idaho Appellate Rule 12.1, the Court reviews the magistrate court's decision without the benefit of a district court appellate decision. *Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015). Decisions regarding child custody are committed to the sound discretion of the magistrate court, and the magistrate court's decision may be overturned on appeal only for an abuse of discretion. *Id.*; *McGriff v. McGriff*, 140 Idaho 642, 645, 99 P.3d 111, 114 (2004); *Moye v. Moye*, 102 Idaho 170, 171, 627 P.2d 799, 800 (1981).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

---

[1]    On appeal, McShane does not challenge the magistrate court's finding that there was a substantial and material change in the parties' circumstances. McShane's appeal focuses solely on the magistrate court's analysis of certain "best interest of the child" factors enumerated in I.C. § 32-717(1).

## ANALYSIS

McShane contends the magistrate court abused its discretion in its analysis and consideration of certain "best interest of the child" factors outlined in I.C. § 32-717(1). Specifically, McShane challenges the magistrate court's findings and conclusions regarding the following factors: continuity and stability; character and circumstances; and the child's adjustment. I.C. § 32-717(1)(d)-(f). McShane contends the magistrate court's findings with respect to these factors were not supported by substantial and competent evidence. Megan responds that the record and applicable law supports the magistrate court's findings and its decision modifying the custody schedule. We hold that the magistrate court's findings and conclusions are supported by substantial and competent evidence and that McShane has failed to show the magistrate court erred in modifying the custody schedule.

### A. I.C. § 32-717(1)(f)--Need to Promote Continuity and Stability

In determining custody, whether in the initial divorce decree or a subsequent modification, the welfare and best interests of the children are of paramount importance. *Silva v. Silva*, 142 Idaho 900, 904, 136 P.3d 371, 375 (2006); *Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct. App. 1987). The controlling statute governing the best interests of the child, I.C. § 32-717, provides a nonexhaustive list of factors for the trial court to consider in making this determination. *Silva*, 142 Idaho at 904, 136 P.3d at 375. Included in the list are: the wishes of the child's parents; the wishes of the child; the interaction and interrelationship of the child with the parents and siblings; the child's adjustment to his or her home, school, and community; the character and circumstances of all the individuals involved; the need to promote continuity and stability in the life of the child; and domestic violence, whether or not in the presence of the child. I.C. § 32-717(1)(a)-(g). Although the court shall consider all relevant factors, the trial court must avoid considering irrelevant factors and avoid assigning too much weight to any particular factor. *Silva*, 142 Idaho at 904, 136 P.3d at 375.

In this case, the magistrate court found there was a material change in circumstances based, in part, on Megan's move to Fruitland, which is closer in proximity to the children's primary

residence and schools.[2] Based on Megan's relocation, and because she already had equal parenting time with the children over the summer, the magistrate court determined that additional time with Megan year-round would "enrich the children's sense of well-being as well as enhance the sense of their identity." The magistrate court found that "a restructuring of the custody schedule to a clear week on/week off throughout the year [would] offer greater consistency." After considering the factors articulated in I.C. § 32-717(1)(a)-(g), the magistrate court found that a week on/week off schedule would be "in the best interests of the children." Ultimately, the magistrate court modified the custody arrangement and awarded both parents "joint legal custody [and] joint physical custody through the school year and through the summer" pursuant to a "week on/week off" schedule.

On appeal, McShane argues the magistrate court abused its discretion when evaluating the best interests of the children by "assigning too much weight to the factor of continuity and stability while seemingly disregarding additional best interests factors that weighed" in his favor. In particular, McShane contends the magistrate court erred in failing to consider the effects the parties' work schedules have on the children. We disagree.

A review of the magistrate court's oral findings and conclusions reveals that the magistrate court did consider the parties' work schedules when evaluating the best interests of the children. Specifically, the magistrate court found that "each parent is similarly composed and involved and financially capable of being a presence" and involved in the children's lives. The magistrate court further noted that, while each parent has different availability, "each one has similar availability in so much as they have means of support and presence and time that they can invest in the children both in school, through extracurricular activity and through weekend familial enrichment." The record, therefore, shows the magistrate court considered the parties' work schedules as part of its best interests of the children analysis and nevertheless found that modification of the custody schedule is in the children's best interests.

---

[2]    With respect to the children's schools, in the context of a contempt proceeding that was ultimately dismissed, the magistrate court found that McShane enrolled the children in a different school without consulting Megan and that McShane's unilateral enrollment of the children without consulting Megan was willful, as evidenced by a text he sent Megan.

McShane's reliance on *Silva*, 142 Idaho 900, 136 P.3d 371, as presenting an analogous situation that requires a different conclusion is unpersuasive. In *Silva*, this Court was asked to determine whether a parent's work schedule and resulting availability to care for a child is a relevant factor a court could consider when deciding child custody issues. *Id.* at 904, 136 P.3d at 375. The father in *Silva* worked twelve-hour night shifts from 6 p.m. to 6 a.m. Because of the father's work schedule, he was not available to be with the children when they woke up in the morning, during evenings, or when they woke up during the night. As a result, the children were required to spend nearly half of their nights away from home while in their father's custody. Moreover, even when the father was available during the day, his fatigue interfered with his ability to care for the children who entertained themselves while he slept. This Court held consideration of a parent's work schedule and need for third-party childcare is appropriate in a child custody determination to the extent that such circumstances are shown to affect the well-being of the children. *Id.* at 906, 136 Idaho at 377. We clarified this holding should not be interpreted to mean that a working parent or a parent with a nontraditional work schedule is a presumptively inferior choice. *Id.* Rather, we merely held that a parent's work schedule may be one factor among many that can assist a magistrate court in tailoring a custody schedule that will best promote the children's welfare. *Id.*

This case is distinguishable from *Silva*. While the father's work schedule in *Silva* directly conflicted with his allotted parenting time, Megan's work schedule does not. Megan testified that she works twelve-hour shifts, from 7:00 a.m. to 7:00 p.m., every Monday, Tuesday, and Wednesday. The magistrate court also heard testimony that Megan's partner does not work on Wednesdays and is able to take the children to school and care for them after school until Megan returns home. On days that both Megan and her partner work, Megan testified that her mother, who lives nearby, can take the children to school. McShane argued that this arrangement equates to Megan leaving her children in the care of third parties for "forty percent" of her custodial time because Megan is not available to take the children to school, pick them up from school, and provides "no dinner" on the days she works. McShane further argues that, conversely, he would have the children "one hundred percent of the time" if the children remained in his full-time physical custody during the school year. This argument lacks merit for several reasons.

5

First, Megan does not leave her children in the custody of third parties "forty percent" of the time during the weeks she has physical custody of the children. McShane calculated this number by dividing the three days Megan works by seven days during the week and "reduc[ing] it" by three percent because Megan gets home from work at 7:10 p.m. and is available until the next morning when she leaves for work. This math equation is illogical. That Megan relies on her mother (the children's grandmother) and her partner (who is close to the children) to take the children to school and perhaps pick them up after school (assuming they are not otherwise occupied in the various extracurricular activities in which they participate) does not mean Megan is "unavailable" for three entire days of her custodial time. If that were true, McShane would also be "unavailable" whatever percentage of time the children are in school or he is having his wife (or anyone else) transport or care for the children, making his assertion that he is available "one hundred percent of the time" incorrect.

Second, it is not true to say, or even suggest, that Megan is unavailable for dinner because she does not get home from work until 7:10 p.m. There is no legal principle that supports this proposition, much less a rational argument that eating dinner after 7:10 p.m. is contrary to the best interests of the children.

McShane's core argument, that Megan is unavailable anytime she is at work, is unsupported by law. A parent is not unavailable simply because the parent works. Even McShane's posited example of Megan's unavailability is contradicted by the record. McShane argued that, because Megan would have to leave work to pick up a sick child from school, she was unavailable. Whether Megan would have to leave work is not relevant to whether she could, i.e., would, be available to do so. Even so, the evidence produced at trial revealed that Megan did leave work on one occasion in order to pick up one of the children because the child was sick and the school was unable to reach McShane even though it was during McShane's scheduled time with the children. By McShane's reasoning, it was actually he who was unavailable despite his more flexible schedule and his claim that he is available "one hundred percent of the time."

McShane also noted Megan's inability to take the children to extracurricular activities while she was at work. Even assuming that the children had extracurricular activities on every day Megan worked, and even assuming that Megan could not take the children to any of those activities, that does not mean Megan is an unavailable parent or that it is not in the best interests

6

of the children for their parents to share equal physical custody. Nor does it mean that McShane cannot take the children to those activities as he claims the children are "accustomed" to having him do. That McShane chose not to only undermines his claim that he is available "one hundred percent of the time."[3]

To the extent McShane believes Megan's work schedule should have been weighed differently, or that the magistrate "assign[ed] too much weight to the factor of continuity and stability," such beliefs are insufficient to demonstrate an abuse of discretion. It is well established that appellate courts in Idaho do not reweigh evidence. *Neustadt v. Colafranceschi*, 167 Idaho 214, 227, 469 P.3d 1, 14 (2020). McShane has failed to show either a factual or legal error underlying the magistrate court's evaluation of the continuity and stability factor in I.C. § 32-717(1)(f).

**B.      I.C. § 32-717(1)(e)--Character and Circumstances**

Idaho Code Section 32-717(1)(e) provides that "the character and circumstances of all individuals involved" are relevant factors a court shall consider when evaluating the best interests of a child. In its oral findings and conclusions, the magistrate court noted that it "was provided with some amount of tensions, disagreement or lack of cooperation between the parents." Both

---

[3]      It appears from the record that McShane believes that the noncustodial parent should have a limited role during the other parent's custodial time, unless he decides otherwise. For example, on one occasion, Megan picked up the parties' sick son from school when the school was unable to reach McShane despite several attempts to do so. Although Megan's custodial time was set to begin that evening, McShane insisted on picking the sick child up from Megan's home for the less than ninety minutes of "his" time remaining that day. McShane texted Megan: "he is still in my custody. you did not get my consent to pick him up." However, during the summer of 2022, when Megan had week on/week off custody, McShane enrolled their daughter in softball lessons without notifying Megan in advance. McShane then asked Megan if she would let the child "practice 3 days in the morning per week" and if Megan was not available due to work, he could take the child to the practices. When Megan asked for more details, including the coach's name and contact information, McShane provided only the date and times. When Megan again asked for the coach's information, McShane responded: "For the time being I will be the contact for the coach." McShane subsequently told Megan she did not need any additional information without a "commitment" that she could "make it to scheduled practices," indicate whether she could "catch" for their daughter or if McShane would have to do so and indicate whether she was "willing to financially help support [their] daughter with her choices to improve herself."

7

parties admit there have been conflicts and tension in their communications since they divorced in 2017. The magistrate court described the evidence offered at trial as follows:

> I have articulated examples of what I wouldn't describe as parental sabotage but I would describe as undermining or intentionally burdening the other parent not to the benefit of the child but for the sake of rigid adherence to rules in order to generate conflict or to make the other parent feel ostracized.

The magistrate court determined that the modified, week on-week off schedule "should alleviate some tensions" by reducing the frequency of custody exchanges between the parents so that "these parents come less into conflict with each other for the benefit of those children." The magistrate court found this "goal of enhancing the children's peace by enhancing the peace between the parents" to be "the ultimate and final compelling reason" for modifying the custody schedule.

On appeal, McShane contends the magistrate court abused its discretion when it found that the modified custody schedule would help alleviate the tension and conflict between the parties, thereby improving the lives of the children. In support, McShane relies on *Woods v. Woods*, 163 Idaho 904, 422 P.3d 1110 (2018), and argues that, because there was "no evidence that the children were not doing well or that the children suffered from conflict or tension," the magistrate court's findings are not supported by substantial and competent evidence. We disagree.

The Court in *Woods* was analyzing the parties' communication issues, including allegations of alienation and animosity that were said to inhibit their ability to co-parent, within the context of whether the initial burden for a modification was met. *Id*. at 908-09, 422 P.3d at 1114-15. As McShane acknowledges, *Woods* is not squarely on point because he does not challenge the magistrate court's finding that a substantial and material change in circumstances warranted modification. Nevertheless, McShane argues the analysis in *Woods* is "important regarding animosity between parties and the resulting impact on the minor children." In particular, McShane asserts that, although he and Megan "do not communicate well," their "poor communication has not negatively impacted the children" as demonstrated by the fact that both parents attend their children's extracurricular activities, ceremonies, and school events. The evidence admitted at trial suggests this assertion is not entirely correct.

For example, when Megan picked up the parties' sick son from school after the school was unable to get in touch with McShane, McShane responded by telling Megan she did not have his "consent" to pick the child up and insisted that he take the child for an hour and fifteen minutes

8

even though the child had a fever, had been vomiting, and just wanted to rest because the child was "still in [his] custody." It is unlikely this conflict did not have a negative impact on the child. A second example relates to the dispute between Megan and McShane when McShane took the position that the children should not attend school if they were required to wear masks. The evidence reveals that McShane contacted the school superintendent asking for accommodations for the masking requirement, including falsely representing that one of the children could not wear a mask for medical reasons, and inquiring about the option of homeschooling. It is unlikely this conflict did not have a negative impact on the children. A third example involved an incident described by Megan in which McShane's wife threw the parties' son's backpack at Megan through her car window shortly after an exchange because the son forgot the backpack in McShane's car. It is unlikely this conflict did not have a negative impact on the children who were present when it occurred. That McShane disputes the incident does not mean there was not substantial evidence from which the magistrate court could conclude it occurred and consider it in its determination that minimizing contact could minimize conflict and benefit the children.

While these examples could occur even with a split custody schedule, they are emblematic of conflict that undoubtedly has an impact on the children and support the magistrate court's conclusion that limiting the frequency of "hand-offs" between the parties is in the best interests of the children. Moreover, regardless of whether both parents can attend their children's activities at the same time, as McShane notes, does not necessarily lead to the conclusion that their children are not impacted by the tension or conflict between them. Indeed, claiming otherwise ignores the realities of human interactions and interpersonal relationships. Nor does it mean that the magistrate court abused its discretion in considering the tension between the parties as part of its character and circumstances analysis. Ultimately, McShane's argument appears to be that, because the children "were thriving under the schedule they have followed since 2019," altering the schedule was improper because there was no evidence that it "would have a positive impact on the health and happiness of the children." In other words, McShane seems to suggest that, because the children did well spending fewer days with Megan during the school year, there was no need to consider whether their best interests would allow for them doing equally as well by giving their mother equal time with them all year. McShane's status quo view of best interests is not the standard and ignores the unchallenged change in circumstances that warranted review of the

9

children's best interests, as well as the presumption for joint physical custody. *See* I.C. § 32-717B. That joint physical custody was not an option under the prior schedule due to the distance between Megan's home and the children's school does not mean it is not in the best interests of the children to enjoy equal time with their parents now that Megan has moved to be closer to the children. Moreover, the magistrate court's determination that a modification was appropriate in light of its consideration of the evidence is entitled to great deference. McShane has failed to show either a factual or legal error underlying the magistrate court's evaluation of the character and circumstances factor in I.C. § 32-717(1)(e) or its weighing of the evidence generally. As such, McShane has failed to show an abuse of discretion.

**C.     I.C. § 32-717(1)(d)--Children's Adjustment to Home, School, and Community**

Idaho Code Section 32-717(1)(d) lists "the child's adjustment to his or her home, school, and community" as a relevant factor a court shall consider when evaluating the best interests of a child. With respect to the children's adjustment to her home on a week-off/week-on schedule, which occurs during the summer, Megan testified that the children "do really well because it gives them enough time at both houses to kind of just relax and there's not too much back and forth." In its analysis of this factor, the magistrate court found that Megan's relocation "made her more integrated to the children's home, school, and community" and determined this factor weighed in favor of both parties.

On appeal, McShane argues the magistrate court abused its discretion by giving equal weight on this factor to both parties and alleges this factor should have weighed solely in his favor. McShane contends that "Megan's involvement in the children's lives, school, and community had not changed since her move" and that "there was no evidence that Megan became more integrated in the children's lives" following her move. McShane asserts that, because Megan failed to provide "testimony on the adjustment of the minor children to her home," this factor should have been weighed solely in his favor and that the magistrate court "abused its discretion in determining otherwise." The record does not support these assertions. Megan testified that the children are well adjusted to her home. The children have a positive relationship with Megan, her partner, and her partner's son. The parties' daughter plays catch with Megan's partner and he has taught both children how to play lacrosse. The parties' son enjoys spending time with Megan's partner, tells him he loves him, and expresses excitement to see him. The children have also written notes to

Megan and her partner expressing affection for them. As a family, they do fun activities together, including attending hockey games and going hiking and rafting. Megan also testified that the children and had done well in the summers when the parties had shared equal physical custody.

McShane's argument, like his arguments in relation to the other best interests factors, essentially asks this Court to reweigh the evidence presented at trial--a task that is not appropriate for an appellate court. *See Neustadt*, 167 Idaho at 227, 469 P.3d at 14. The magistrate court weighed the evidence presented at trial and, utilizing the factors enumerated in I.C. § 32-717, determined that modification of the custody schedule is in the children's best interests. Absent clear error, we will not disturb those findings on appeal. *See Woods*, 163 Idaho at 907, 422 P.3d at 1113 (explaining that findings of fact that are supported by substantial and competent evidence are not clearly erroneous--even in the face of conflicting evidence in the record). McShane has failed to show either a factual or legal error underlying the magistrate court's evaluation of the children's adjustment factor in I.C. § 32-717(1)(d).

### D.     Attorney Fees

On appeal, Megan requests an award of attorney fees and argues that McShane's appeal is frivolous and unreasonably brought because it is a request to second-guess the magistrate court's discretionary decisions regarding custody of the minor children. McShane responds that Megan's request for attorney fees on appeal should be denied because he has "provided a cogent legal argument justifying a reversal" of the magistrate court's decision.

An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). An award of attorney fees is appropriate if the appellant only invites this Court to second-guess the trial court on conflicting evidence, or if the law is well settled and the appellant has made no substantial showing that the lower court misapplied the law, or no cogent challenge is presented with regard to the trial court's exercise of discretion. *Pass v. Kenny*, 118 Idaho 445, 449-50, 797 P.2d 153, 157-58 (Ct. App. 1990); *McPherson v. McPherson*, 112 Idaho 402, 407, 732 P.2d 371, 376 (Ct. App. 1987). That standard for an award of attorney fees is satisfied in this case. Accordingly, Megan is awarded attorney fees on appeal.

11

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's findings and conclusions regarding the best interests of the children in relation to the custody modification. McShane has, therefore, failed to show any error in the magistrate court's analysis and consideration of certain best interest of the child factors outlined in I.C. § 32-717(1). Accordingly, the judgment modifying child custody is affirmed. Costs and attorney fees on appeal are awarded to Megan.

Chief Judge GRATTON and Judge Pro Tem MELANSON, **CONCUR**.